**Darvin James LUCAS, Appellant,**

v.

**TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES, Appellee.**

No. 10–96–259–CV.

Court of Appeals of Texas, Waco.

July 16, 1997.

Rehearing Overruled Aug. 27, 1997.

Phil Robertson, Robertson & Robertson, Clifton, Diane Hightower. Meridian, for appellant.

Craig Carter, Asst. Attorney General, Austin, Patricia Ferguson, Meridian, for appellee.

no arrest warrant affidavits were submitted to this court.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

Appellee, the Texas Department of Protective and Regulatory Services ("DPRS"), filed suit to terminate the parental rights of Appellant Darvin James Lucas with respect to his three children. As the sole ground for termination, DPRS alleges that Lucas has engaged in conduct or knowingly placed the children with persons who have engaged in conduct which endangers the physical or emotional well-being of the children. *See* Act of May 25, 1973, 63rd Leg., R.S., ch. 543, § 1, 1973 Tex. Gen. Laws 1411, 1426–27, *repealed by* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282 (current version at TEX. FAMILY CODE ANN. § 161.001(1)(E) (Vernon 1996)).[1] Lucas did not request a jury trial. The court found that he had engaged in the conduct alleged and that termination is in the best interest of the children. The court signed a decree terminating Lucas' parental rights.

Lucas brings this appeal asserting in seven points that six of the court's findings of fact are not supported by legally or factually sufficient evidence and one of the court's conclusions of law is not supported by legally or factually sufficient evidence. We will affirm the judgment.

The centerpiece of DPRS' case is Lucas' 1995 conviction for four counts of aggravated sexual assault by contact with H.L., one of his daughters. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B) (Vernon Supp. 1997). These incidents occurred over a six-month period between September 1994 and March 1995. H.L. was seven-years-old when the first assault occurred and eight when the next three occurred. DPRS offered the judgment of conviction from the criminal case as well as the stipulation of evidence in which Lucas admitted that he had committed the offenses.

Sharon Mills, a child protective services specialist with DPRS, testified that DPRS initially became involved with the Lucas family after receiving a report that Lucas' eleven-year-old son had sexually abused a three-year-old child whose family was living with the Lucases at that time. In a follow-up visit several months later, H.L. confided in Mills that Lucas had sexually abused her. Because of the previous allegation regarding Lucas' son, DPRS determined at that point to remove the children from the home.

DPRS offered in evidence a portion of Mills' narrative report prepared in connection with the Lucas family. The narrative reflects that H.L. told Mills that Lucas had put his penis "inside her and it hurt[ ]." Lucas objected to the narrative report on hearsay grounds. The court admitted the document but advised the parties that it was admitted as a business record "but not for the truth of the matter asserted in any hearsay utterances contained in it." We presume that the court did not consider H.L.'s hearsay statements contained in the narrative. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 450 (Tex.1982); *Acker v. Denton Publishing Co.*, 937 S.W.2d 111, 119 (Tex.App.—Fort Worth 1996, no writ).

Mills testified that all three Lucas children lived in the home with Lucas and his wife when she first visited the home in November 1994. After the follow-up visit in March 1995, DPRS removed "all three children from the home."

The court made nine "findings of fact" and four "conclusions of law" in support of its judgment. Lucas contends in his first six points that no evidence, or in the alternative factually insufficient evidence, exists to support the court's findings that:

● he sexually abused M.L., his two-year-old daughter, by fondling her sexual organs for sexual gratification;

● he sexually abused H.L. by penetrating her vagina with his penis;

---

1. The current provision does not vary from its predecessor. Thus, all future references herein will be to the current statute.

- he has engaged in sexual abuse of children of friends by fondling these children;
- his son, J.L., was present in the Lucas household when J.L. sexually abused H.L. and Darvin Lucas;[2]
- after the incidents of sexual abuse, he engaged in inappropriate sexually oriented behavior;
- J.L. experienced emotional and behavioral problems as a result of the sexual abuse Lucas perpetrated on his sisters.

Lucas' seventh point claims the court's conclusion that "Lucas engaged in conduct which endangered the physical and emotional well-being of [H.L., M.L., and J.L.] when he sexually abused [H.L. and M.L]" is not supported by the court's findings of fact nor by legally or factually sufficient evidence.

■ We may treat findings mislabeled as conclusions of law as findings of fact. *Ray v. Farmers State Bank of Hart,* 576 S.W.2d 607, 608 n. 1 (Tex.1979); *Posner v. Dallas County Child Welfare Unit,* 784 S.W.2d 585, 587 (Tex.App.—Eastland 1990, writ denied). The court's "conclusion" quoted above is a finding of fact necessary to support the court's conclusion that Lucas' parental rights be terminated. *See id.* at 587; *Flowers v. Texas Dep't of Human Resources,* 629 S.W.2d 891, 893 (Tex.App.—Fort Worth 1982, no writ). Hereinafter, we refer to this finding as "Finding No. 10."

■ We review findings made by a trial court in the same manner as jury findings. *See Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). However, when a complete statement of facts appears in the record, we are not limited to the trial court's written findings of fact. *Swanson v. Swanson,* 148 Tex. 600, 603, 228 S.W.2d 156, 158 (1950); *Scott v. Younts,* 926 S.W.2d 415, 420–21 n. 8 (Tex.App.—Corpus Christi 1996, no writ). We will not reverse the judgment because of

erroneous findings if the judgment is otherwise correct on the merits. *$47,200 U.S. Currency v. State,* 883 S.W.2d 302, 309 (Tex. App.—El Paso 1994, writ denied); *Lone Star Salt Water Disposal Co. v. Railroad Comm'n,* 800 S.W.2d 924, 931 (Tex.App.— Austin 1990, no writ); *Vandever v. Goettee,* 678 S.W.2d 630, 635 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■ We must uphold a correct judgment, "even if the lower court has relied on an incorrect legal theory and even if the lower court has given an incorrect reason for its judgment." *Lone Star Salt Water Disposal Co.,* 800 S.W.2d at 931 (citing *Guaranty County Mut. Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986)). Thus, even if the court's findings (or a part thereof) lack sufficient evidentiary support, we will affirm the judgment if the record demonstrates sufficient evidence to do so. *See Block v. Waters,* 564 S.W.2d 113, 115 (Tex.Civ.App.—Beaumont 1978, no writ) (citing *Whitworth Estate v. Mangels of Tex., Inc.,* 363 S.W.2d 851, 860 (Tex.Civ.App.—Waco 1962, no writ)).

When we decide a "no evidence" point, we consider only the evidence and inferences which tend to support the contested issue and disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex.1992). We uphold the verdict if we find any probative evidence supporting the contested issue. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989).

A factual sufficiency challenge requires us to consider and weigh all the evidence. *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex. 1985); *In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). We will set aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Dyson,* 692 S.W.2d at 457.[3]

---

**2.** Lucas suggests that the court may have confused the names of Lucas and his son when drafting this finding. However, we need not address the propriety of this finding because we will determine that other findings suffice to support the court's judgment. *See Williford Energy Co. v. Submergible Cable Serv., Inc.,* 895 S.W.2d 379, 392 (Tex.App.—Amarillo 1994, no writ); *Ar-*

*thur M. Deck & Assoc. v. Crispin,* 888 S.W.2d 56, 62 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

**3.** DPRS had to prove its case by clear and convincing evidence. *In the Interest of G.M.,* 596 S.W.2d 846, 847 (Tex.1980). Because this is a higher burden than the traditional preponder-

The parties do not dispute that Lucas sexually abused H.L., nor do they dispute that the evidence suffices to establish this fact. Lucas' argument implies that because the court made a more specific finding that Lucas sexually abused H.L. by penetration, which is unsupported by the evidence, the court necessarily meant that Lucas sexually abused H.L. by penetration when it found that he sexually abused her in Finding No. 10. We disagree.

In order to prevail at trial, DPRS had to prove that Lucas engaged in conduct which endangered the physical or emotional well-being of his children. TEX. FAMILY CODE ANN. § 161.001(1)(E). If the evidence shows a course of conduct on Lucas' part "which has the effect of endangering the physical or emotional well-being of" his children, a finding under section 161.001(1)(E) will be upheld. *Texas Dep't of Human Serv. v. Boyd,* 727 S.W.2d 531, 534 (Tex.1987).

A parent's abusive conduct directed toward one child will suffice to support termination as to other children. *See Director of the Dallas County Child Protective Serv. Unit v. Bowling,* 833 S.W.2d 730, 733 (Tex. App.—Dallas 1992, no writ); *Clark v. Clark,* 705 S.W.2d 218, 219 (Tex.App.—Dallas 1985, writ dism'd). Similarly, a parent's abuse of a spouse can suffice to support termination of the abuser's parental rights. *See In the Interest of B.J.B.,* 546 S.W.2d 674, 676 (Tex. Civ.App.—Texarkana 1977, writ ref'd n.r.e.).

A division of authority exists regarding whether the other children must be present when the abuse occurs before parental rights can be terminated as to the unabused children. The Beaumont Court of Civil Appeals held in 1978 that the abusive conduct alleged must be committed in the presence of a child before the parent's relationship with that child can be terminated. *Lane v. Jefferson County Child Welfare Unit,* 564 S.W.2d 130, 132 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). Other courts have held that the child(ren) need not be present before termination can be justified. *Bowling,* 833 S.W.2d at 733; *Clark,* 705 S.W.2d at 219; *Navarrette v. Texas Dep't of Human Resources,* 669 S.W.2d 849, 852 (Tex.App.—El Paso 1984, no writ); *B.J.B.,* 546 S.W.2d at 676. We will follow the latter cases.

The undisputed evidence shows that Lucas sexually abused H.L. on at least four occasions. The record reflects that the children all lived in the home at the time the abuse occurred. Dr. James Shinder, a clinical psychologist, testified that Lucas' behavior fits the classical diagnosis of pedophilia. Lucas does not contest this diagnosis. We conclude that this uncontroverted evidence is both legally and factually sufficient to support the court's finding that Lucas endangered his children when he sexually abused H.L. *Clark,* 705 S.W.2d at 219.[4]

Because legally and factually sufficient evidence exists to support the court's finding that Lucas sexually abused H.L. and to show a course of conduct on Lucas' part "which has the effect of endangering the physical or emotional well-being of" his other children, we overrule Lucas' seventh point. *Boyd,* 727 S.W.2d at 534.

The court found that Lucas is the father of the three children the subject of this suit. The court found that he endangered the physical and emotional well-being of the children when he sexually abused H.L. The court also found that termination of Lucas' parental rights is in the best interest of the

---

ance standard, some appellate courts have adopted an intermediate appellate standard of review in such cases. *See Williams v. Texas Dep't of Human Serv.,* 788 S.W.2d 922, 926 (Tex. App.—Houston [1st Dist.] 1990, no writ); *Neiswander v. Bailey,* 645 S.W.2d 835, 835–36 (Tex. App.—Dallas 1982, no writ); *see also* Bill Vance, *The Clear and Convincing Evidence Standard in Texas: A Critique,* 48 BAYLOR L.REV. 391 (1996); *but cf. In the Interest of J.J.,* 911 S.W.2d 437, 439–40 & n. 1 (Tex.App.—Texarkana 1995, writ denied). Lucas urges us to follow this intermediate standard of review. However, we need not decide the appropriate appellate standard be-

cause the evidence we rely on is uncontroverted. Thus, it supports the judgment under either standard.

4. We agree with Lucas that no evidence exists in the record to support the court's findings that he sexually abused M.L. Thus, we disregard Finding No. 10 to the extent it determines that he did so. *See Hancock v. Zurich Ins. Co.,* 361 S.W.2d 248, 250–51 (Tex.Civ.App.—Beaumont 1962, writ ref'd n.r.e.) (citing *Swanson,* 148 Tex. 600, 603, 228 S.W.2d 156, 158 (1950)).

children. The evidence supports these findings, which are sufficient standing alone to support the judgment. *Id.*

Because these findings support the judgment, we need not consider Lucas' first through sixth points concerning the remainder of the court's findings. *See Williford Energy Co. v. Submergible Cable Serv., Inc.,* 895 S.W.2d 379, 392 (Tex.App.—Amarillo 1994, no writ); *Arthur M. Deck & Assoc. v. Crispin,* 888 S.W.2d 56, 62 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

We affirm the judgment.