TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00169-CV






T. R. and B. R., Appellants


v.


Texas Department of Family and Protective Services, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. D-1-FM-10-000506, HONORABLE RHONDA HURLEY, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Appellants T.R. and B.R. filed notices of appeal from the judgment and decree
terminating their parental rights to five children. Appellants' appointed attorneys have filed Anders-style briefs stating that, after conscientiously examining the record, they have found no argument
that could possibly persuade the court to reverse or modify the judgment. See Anders v. California,
386 U.S. 738, 744 (1967); Taylor v. Texas Dep't of Protective & Regulatory Servs., 160 S.W.3d 641,
646 (Tex. App.--Austin 2005, pet. denied). Both appellants' attorneys seek to withdraw as counsel.
The attorney ad litem for the children has filed a brief concurring with appellants' attorneys'
determination that this appeal is frivolous. Neither appellant has filed a pro se brief. After reviewing
the record, we find that the appeal is frivolous as to each appellant, we grant both appellants'
attorneys' motions to withdraw as counsel, and we affirm the judgment terminating the parental
rights of both appellants as to all five children.

Standard of review for sufficiency challenges in parental-rights termination cases

 A trial court can involuntarily terminate a parent-child relationship only if the court
finds by clear and convincing evidence (1) that the parent has committed an act or omission
statutorily deemed to warrant termination, and (2) that termination of the relationship is in the
child's best interest. Tex. Civ. Prac. & Rem. Code Ann. § 161.001 (West Supp. 2011). Under the
charge presented at trial, the jury found by clear and convincing evidence that termination of
appellants' parental rights was in the children's best interest and that at least one of the following
statutory grounds warranting termination was present in this case:


 (1) [appellants] engaged in conduct or knowingly placed the child [] with persons
who engaged in conduct which endangered the physical or emotional well-being of
the child; or 


 (2) [appellants] knowingly placed or knowingly allowed the child [] to remain in
conditions or surroundings which endangered the physical or emotional well-being
of the child.


See Tex. Civ. Prac. & Rem. Code Ann. § 161.001(D), (E) (West Supp. 2011). To "endanger"
means to expose the child to loss, injury, or danger. In re M.C., 917 S.W.2d 268, 269 (Tex. 1996).
The endangering conduct does not have to occur in the presence of the child. Clark v. Clark,
705 S.W.2d 218, 219 (Tex. App.--Dallas 1995, writ dism'd). The best interests of the children
are assessed on an array of factors, including those described by the Texas Supreme Court in Holley
v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). (1) We will briefly summarize significant evidence
from the trial.

 The appellants had a history of family violence preceding the event that led to
this removal of their five children: a boy born in 1996, a girl born in 1997, a boy born in 1999,
and twin girls born in 2003. T.R. was charged with domestic violence in 1998 for hitting B.R. and
breaking her nose. Another time, T.R. slapped B.R. in front of their children. There was evidence
that T.R. occasionally lost control while spanking their older boy, and he gave the boy a black eye
in 2004 during a discipline session. The older boy told a psychologist that his parents once held a
knife to his throat. Other witnesses noted that one of the twins played with knives an unusual
amount. The Department found reason to believe other incidents of physical abuse of the children
occurred in November 2004, January 2005, and February 2005. The Department investigated and
removed the children from B.R. and T.R. in 2005. Appellants underwent counseling and parenting
classes, after which the children were returned to them.

 The evidence was undisputed that, in 2010, T.R. and B.R. beat their twelve-year-old
daughter when they discovered that she had skipped school to go to a mall and then lied to them.
T.R. publicly and profanely berated the girl in her in-school suspension classroom when he and B.R.
came to pick the child up early. When they got home, T.R. hit the child so hard that she fell. B.R.
then began to question the child and, when the answers were unsatisfying, pushed her and hit her on
the arm and back more than ten times with an open hand. B.R. then spanked the child with a belt
repeatedly--at first on her buttocks and then, when the child moved, B.R. struck her "wherever the
belt had landed" including on her face an unspecified number of times. When the belt flew out of
her hand, B.R. hit the child with a shoe an unspecified number times, at least once in the forehead. (2)
The child tried to leave the house, but T.R. intercepted her. There was testimony that he may have
put his hands around the child's throat, squeezed for about thirty seconds, and then thrown her to the
ground. Photos of the child after the beating were admitted at the trial.

 The Department first removed only the girl who was beaten but, after considering the
facts and family history, the Department decided that the remaining children were in danger and
removed them, too. The parents' assault on their daughter led to criminal charges, guilty pleas, and
probated sentences. Both parents described the incident as abuse and both expressed remorse. They
agreed to probation orders that restricted them to supervised visits with their children for seven years.

 Other evidence regarding the parents' care for the children and the children's best
interests was more mixed. Appellants met with teachers, said they valued education, helped with
school events and sports practices, and, after the children were removed, completed improvement
classes. Therapists testified that appellants were making progress, that the children were happy to
see them and wanted to return home eventually, (3) but that the parents had not improved enough
to retake their children. There was testimony, however, that the children feared their parents
might harm them. The older boy reportedly had contemplated suicide before being removed. The
oldest daughter told the psychologist that her parents threatened to kill her and that she did not
want to return to them. One of the younger girls reportedly became ill from nervousness about a
supervised visit with her parents, although another witness testified that the child was merely sick.
The Department caseworker testified that, although appellants and their children love each other,
she concurred with the children's reported worry that their parents would abuse them if the
family was reunited.

 We have reviewed the record. Although there was conflicting evidence, the record
contains more than sufficient evidence for a reasonable fact-finder to form a firm conviction
or belief from the evidence presented that grounds exist for termination and that termination is
in the best interest of the child. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002) (legal sufficiency of
the evidence); In re C.H., 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency of the evidence). Our
review of the record reveals no possible basis for reversal on this record, and we conclude that this
appeal is frivolous as to both parents.

 We affirm the judgment terminating appellants' parental rights as to all five children.
We grant appellants' attorneys' motions to withdraw as counsel for appellants.


 

 Jeff Rose, Justice

Before Chief Justice Jones, Justices Puryear and Rose

Affirmed

Filed: May 2, 2012
1. The non-exclusive best-interest factors gleaned from Holley v. Adams are: (1) the child's
desires, (2) the emotional and physical needs of the child now and in the future, (3) the emotional
and physical danger to the child now and in the future, (4) the parental abilities of the persons
seeking custody, (5) programs available to assist these individuals to promote the best interest of the
child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the
stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate
that the existing parent-child relationship is not a proper one, and (9) any excuse for the parent's acts
or omissions. The Holley factors are not exhaustive, and there is no requirement that all factors be
proved as a condition precedent to parental termination. In re C.H., 89 S.W.3d 17, 27 (Tex. 2002).
2. T.R. testified that he walked out of their home periodically during these events as he was
trying to implement the anger-management classes he took during the 2005 removal.
3. There was also testimony that the oldest girl did not want to return home and wanted to
be adopted.